UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEE, INC., a Michigan corporation,

    Plaintiff,

v.

SEE CONCEPT SAS, a French company,
and AMEICO, INC., a Connecticut
corporation,

    Defendants.
    _____/

Case No.16-13261

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE [22]**

This case involves two eyeglass sellers that cannot see eye-to-eye regarding their settlement obligations. Plaintiff SEE, Inc. alleges that Defendant See Concept SAS breached the terms of their settlement, and Defendant contests that claim. The matter now before the Court is Defendant's motion for summary judgment. For the reasons below, Defendant's motion is DENIED without prejudice to summary judgment on other grounds.

**I.  Background**

The settlement at issue resulted from a lawsuit that Plaintiff commenced in January 2015. In that suit, which was also before this Court, Plaintiff claimed that Defendant was selling eyeglasses under a SEE CONCEPT trademark that infringed Plaintiff's SEE marks. *See* 2:15-cv-10047-NGE-RSW. Plaintiff specifically alleged trademark infringement, unfair competition, and a violation of the Michigan Consumer Protection Act. All of those claims were then resolved in October 2015 when the parties agreed to settle the case. The parties stipulated to an order of dismissal, which the Court entered later that month.

As to the settlement agreement itself, the parties have not submitted a copy, so the Court must rely on the parties' claims regarding its terms   According to the parties, the agreement requires Defendant to "[d]iscontinue all use" of its SEE CONCEPT mark in the United States after January 31, 2016 and in the rest of North America after April 30, 2016. (Dkt. 15-1, at 1.) The agreement further provides that a breaching party has ten days to cure its breach after it receives a notice of breach.  (Dkt. 6 at ¶ 35; Dkt. 22, at 10.)

Seven months after the parties memorialized their settlement, Plaintiff sent Defendant a letter on May 31, 2016, claiming that Defendant was in breach (the "Notice of Breach"). This Notice of Breach specifically alleged that: (1) Defendant's website was still available to users in North America and was replete with the SEE CONCEPT mark; and (2) Defendant continued to use the SEE CONCEPT mark on numerous social media websites. (Dkt. 15-1, at 1.)  The Notice of Breach also outlined steps Defendant could take to cure what Plaintiff termed "material breaches of the Settlement Agreement."  (*Id.* at 2.)   These steps included: (1) discontinuing the use of SEE CONCEPT in North America; (2) removing SEE CONCEPT from all websites and social media sites that can be accessed in North America; (3) confirming that it was no longer selling products bearing the SEE CONCEPT mark in North America; and (4) informing Plaintiff of the new name Defendant planned to use. (*Id.*)  The Notice of Breach further emphasized that Plaintiff would seek to enforce the settlement agreement if Defendant did not comply.  (*Id.* at 1.)

Seven days later, on June 7, 2016, Defendant's principal, Charles Brun, initiated a sequence of email correspondence with Plaintiff's principal, Richard Golden.  (Dkt. 15-2.) He insisted that Defendant had complied with all of Plaintiff's requests: "[W]e confirm [to] you that we are totally respecting the settlement agreement and all the mentioned dates

2

and requests." (*Id.* at 25.) Brun elaborated: "Since the 31st of January 2016, we have blocked all the online sales to the US and since the 30th of April 2016, we have blocked all the online sales to Canada and Mexico. . . . Concerning the social networks and especially our Facebook page, this is a worldwide page and we also totally avoid [talking] about the US, Canada or Mexico[.]" (*Id.*)

Three days after that, on June 10, Golden replied, contesting Brun's claim that Defendant was in "full compliance" with the settlement agreement. (*Id.* at 24.) Golden stated that Plaintiff had evidence of Defendant's informing customers in North America that they could buy Defendant's glasses online as recently as June 5, 2016. (*Id.*) He added that Plaintiff would offer Defendant a "solution" outlining steps that must be taken immediately to avoid enforcement of the agreement. (*Id.*) Furthermore, Golden reiterated that Plaintiff would file a lawsuit in this Court if Defendant did not comply.

Pursuant to that email, Plaintiff's counsel sent a letter to Defendant's counsel on June 23, which restated verbatim the demands that Plaintiff made in the Notice of Breach. (Dkt. 18-4, at 3.) This letter added that if Defendant did not comply with Plaintiff's demands within ten days, Plaintiff would file an action to enforce the settlement agreement. (*Id.*)

Meanwhile, direct correspondence between Brun and Golden continued, although it was decidedly one-sided for a while. Beginning on June 14, Brun sent a series of emails that went unanswered for three weeks. These emails informed Golden of the trademark Defendant would use in the future, continued to maintain that Defendant had not breached the settlement agreement, and requested further clarification regarding the alleged breaches. (Dkt. 15-2, at 15-21.) Brun never mentioned the June 23 letter.

Finally, on July 5, Golden acknowledged receiving Brun's messages. Three days later, on July 8, Golden presented a "solution" to "resolve the matter amicably." (*Id.* at 12.) He did not mention the June 23 letter, and the proposed "solution" diverged slightly from the demands issued in the Notice of Breach and the June 23 letter. Specifically, Golden proposed that Defendant would need to agree to the following within seven days to resolve the matter: (1) cease any behavior characterized as "passive selling"; (2) block North American access to Defendant's website, as well as any other websites containing the mark SEE CONCEPT that are owned or controlled by Defendant; (3) block North America from accessing all social media sites controlled by Defendant and containing the mark SEE CONCEPT; and (4) confirm that Defendant was no longer selling any SEE CONCEPT branded goods to anyone in North America. (*Id.*) Seven days later, Brun replied, claiming that Defendant had fully complied with Defendant's proposal. (*Id.* at 11-12.)

The parties next exchanged a series of emails in which they disputed whether Defendant had actually ceased selling its products in the United States in accordance with the settlement agreement. (*Id.* at 1-10.) That argument never resolved, so Plaintiff filed this lawsuit on September 9, 2016, alleging breach of contract and reasserting the claims from the parties' previous lawsuit. Then, on November 23, 2016, Defendant filed a motion to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 15.) Defendant's motion argued that Plaintiff's claims should be dismissed either because (1) Defendant cured the alleged breaches within the ten day cure period or (2) the parties agreed to waive the ten day cure period. In support, Defendant submitted copies of the Notice of Breach, the email correspondence between Brun and Golden, and an affidavit

4

from Brun. Plaintiff responded on December 19, 2016 with exhibits of its own, including, but not limited to, a declaration from Golden and a copy of the June 23 letter from Plaintiff.

On January 5, 2017, given the nature of Defendant's arguments and the parties' submissions, the Court converted Defendant's motion to dismiss into one for summary judgment. (Dkt. 21.) The Court further ordered supplemental briefing related to whether Defendant was entitled to summary judgment on the grounds alleged in Defendant's motion to dismiss, and it instructed the parties to submit all relevant evidence. (*Id.*) Now, having received the parties' supplemental briefing (neither party submitted additional evidence), the Court issues this Opinion and Order.

**II.   Applicable Standard**

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (internal citation omitted). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**III.   Analysis**

Defendant moves for summary judgment on two bases. First, Defendant argues that the record establishes that it cured the alleged breaches within the ten day cure period.

5

Alternatively, Defendant argues that the correspondence between Brun and Golden shows that Plaintiff agreed to waive the cure period.

Plaintiff responds that the correspondence between Brun and Golden is inadmissible under Federal Rule of Evidence 408, which prohibits the use of settlement communications to prove or disprove the validity or amount of a disputed claim. Plaintiff next maintains that, even if the correspondence is admissible, Defendant has not shown that it is entitled to summary judgment. For the reasons below, the Court finds that Defendant is not entitled to summary judgment regardless of whether the correspondence is admissible.

### A. Whether Defendant Cured the Alleged Breaches within the Cure Period

Defendant first argues that it is entitled to summary judgment because the undisputed evidence establishes that it cured the alleged breaches within the ten day cure period. More specifically, Defendant contends that it complied with the cure provision by addressing each demand included in Golden's July 8 "solution" within seven days. But it is undisputed both that Defendant received Plaintiff's Notice of Breach on May 31 and that the only evidence related to Defendant's conduct over the next ten days is Brun's June 7 email.[1] Accordingly, for Defendant's theory to succeed, the Court would need to find one of the following: (1) that the May 31 Notice of Breach did not trigger the cure period; (2) that Brun's June 7 email demonstrates that Defendant cured the breaches; or (3) that Brun's June 7 email extended the period for cure. The Court finds none of the above.

First, the Court finds a genuine issue of fact as to whether the May 31 Notice of Breach supplied effective notice, thereby commencing the cure period. *See K&M Joint*

---

[1] Brun's affidavit says nothing about the breaches alleged, both of which relate to Defendant's marketing. The affidavit only discusses Defendant's sales. (*See* Dkt. 15-3.)

*Venture v. Smith Intern., Inc.*, 669 F.2d 1106, 1111 (6th Cir. 1982) ("[T]he question of whether any notice was given, and if so, what the notice consisted of and when it was given, is one of fact."). "[F]or a notice of breach to be effective, it must 'objectively' put the allegedly breaching party on 'notice that a cure period [is] being triggered' and that 'drastic legal repercussions' will result from a failure to cure."[2] *In re 4Kids Entm't, Inc.*, 463 B.R. 610, 682 (Bankr. S.D.N.Y. 2011) (quoting *Gil Enterprises, Inc. v. Delvy*, 79 F.3d 241, 246 (2d Cir. 1996)). Here, the May 31 Notice of Breach alleged specific material breaches of the settlement agreement, issued specific demands for cure, and informed Defendant that Plaintiff would sue if Defendant did not comply. In light of these facts, a reasonable jury could find that the Breach of Notice was effective, thus starting the cure period on May 31.

Next, the Court finds that Brun's June 7 email neither establishes that Defendant cured the breaches nor indicates that Defendant somehow extended the period for cure. The Court bases these findings on its interpretation of the cure provision, which the parties agree is governed by Michigan law. (Dkt. 25, at 9.)

Under Michigan law, "[t]he terms of [a] contract are accorded their plain and ordinary meaning." *Hastings Mut. Ins. Co. v. Safety King, Inc.*, 778 N.W.2d 275, 292 (Mich. App. 2009). To determine a provision's plain and ordinary meaning, courts "may resort to a dictionary such as *Webster's*[.]" *Tenneco, Inc. v. Amerisure Mut. Ins. Co.*, 761 N.W.2d 846, 869 (Mich. App. 2008) (citing *Citizens Ins. Co. v. Pro-Seal Service Group, Inc.*, 730 N.W.2d 682, 686 (Mich. 2007)). If the court finds that the plain meaning is unambiguous, it "must

---

[2] Although the parties agree that Michigan law governs their contract, the Court borrows a standard from a case applying New York law because it was unable to find a Michigan case announcing a clear standard for what constitutes an effective notice of breach. The Court also believes that the standard cited is a sensible test.

7

interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law." *Hastings Mut. Ins. Co.*, 778 N.W.2d at 292 (citing *In re Smith Trust*, 745 N.W.2d 754, 758 (Mich. 2008)). Furthermore, courts must avoid interpreting language in a way that renders it meaningless. *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003) ("[C]ourts must also give effect to every word, phrase, and clause in a contract and avoid an interpretaion that would render any part of the contract surplusage or nugatory.").

Here, the parties have not defined "cure" in their settlement agreement, but the Court concludes that the cure provision has a plain and unambiguous meaning that must be enforced as a matter of law. *Hastings Mut. Ins. Cor.*, 778 N.W.2d at 292. Specifically, the Court finds that the provision plainly requires a party to correct, eliminate, or rectify a breach, and a variety of sources support this interpretation. Dictionaries agree that curing connotes correction, elimination, or rectification. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 284 (10th ed. 1999) (defining cure as "to deal with in a way that eliminates or rectifies"); THE AMERICAN HERITAGE DICTIONARY 323 (11th ed. 2003) (defining cure as "to get rid of" or "to remedy"). And the UCC, which governs contracts for the sale of goods, uses the term consistently with those meanings. It designates the right to "cure" as the right of a seller to correct a non-conforming delivery of goods by making a conforming delivery within the contract period. U.C.C. § 2-508(1). Furthermore, courts in other contexts have defined curing as "taking care of the triggering event." *In re Taddeo*, 685 F.2d 24, 26 (2d Cir. 1982) (interpreting the meaning of "curing a default" under the Bankruptcy Code).

8

Having construed the cure provision to require correction, elimination, or rectification of breaches, the Court finds that Brun's June 7 email does not establish that Defendant cured the alleged breaches. All Brun's email does is contest Plaintiff's allegations. It does not show that Defendant corrected, eliminated, or rectified any alleged breaches. Therefore, Defendant is not entitled to summary judgment on the issue of whether it cured the alleged breaches within ten days of the Notice of Breach.

The Court also rejects Defendant's suggestion that Brun's email somehow extended the period for cure. First, the plain meaning of the cure provision forecloses that argument. The settlement agreement requires a party to *cure* after receiving a notice of breach, rather than simply *respond*. Or, as Plaintiff explains, the parties agreed to a "breach and cure" provision, not a "breach and response" provision. Moreover, the Court cannot read the provision as Defendant proposes because doing so would render the parties' contractual right to enforce the agreement following a notice of breach "surplusage or nugatory." *Klapp*, 663 N.W.2d at 453. Indeed, under Defendant's theory, a breaching party could delay all attempts to enforce the settlement agreement simply by responding *ad infinitum*. That would effectively deprive the nonbreaching party of its contractual right to enforce the agreement, and the Court cannot adopt a reading that renders a provision meaningless. *Id.* In light of the foregoing, Defendant is not entitled to summary judgment regarding whether it cured the alleged breaches within the cure period.

### B. Whether Plaintiff Waived the Cure Period

Defendant next argues that it is entitled to summary judgment because the correspondence between Brun and Golden establishes that Plaintiff waived its right to enforce the settlement agreement. The Court again disagrees with Defendant. Under

9

Michigan law, waiver is the voluntary and intentional abandonment of a known right. *Quality Products and Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 258 (Mich. 2003). A litigant establishes waiver by presenting "clear and convincing evidence that a contracting party, relying on the terms of the prior contract, knowingly waived enforcement of those terms." *Id.* "[W]aiver may be shown by express declarations or by declarations that manifest the parties' intent and purpose," and it must be explicit. *Sweebe v. Sweebe*, 712 N.W.2d 708, 712 (Mich. 2006) (addressing waiver of interest in ERISA plan proceeds).

Here, there is a genuine issue of fact as to whether Plaintiff waived its right to enforce the settlement agreement. Defendant's only evidence of waiver lies in the correspondence between Golden and Brun, where they discuss a potential "solution" to their dispute. Read in the light most favorable to the Plaintiff, these communications do not establish that Plaintiff intentionally and knowingly waived its right to sue for breach of contract. To the contrary, these emails indicate that Plaintiff believed it could bring a lawsuit at any time and was seeking only to negotiate terms to avoid further litigation. As other courts have noted, "generally, negotiations that could resolve issues of non-performance but that do not result in a resolution do not constitute waiver because they do not manifest a clear intent to waive the right of performance." *Travel Re-Insurance Partners, Ltd. v. Liberty Travel, Inc.*, 2012 WL 1623855, at *12 (D.N.J. May 9, 2012); *see also Ballard v. Parkstone Energy, LLC*, 522 F. Supp. 2d 695, 710 (S.D.N.Y. 2007) (denying motion for summary judgment and finding that evidence of settlement discussions, even if admissible, did not support finding of waiver); *Kamalnath v. Mercy Mem. Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. App. 1992) ("Mere discussions and negotiation, including unaccepted offers, cannot be a substitute for the formal requirements of a contract."). Given the above, Defendant has not established

that Plaintiff waived the right to enforce the settlement agreement, and Defendant is not entitled to summary judgment on this ground.

## IV. Conclusion

For the reasons stated above, Defendant's motion for summary judgment is DENIED without prejudice to summary judgment on other grounds.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: February 28, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 28, 2017, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager